**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TRUSTEES OF THE NATIONAL :<br>ELEVATOR INDUSTRY PENSION :<br>FUND, *et al.*, :<br>    :<br>    v. :<br>    :<br>BAYSIDE ELEVATORS LLC d/b/a :<br>EASTCOAST ELEVATOR SERVICE, *et al*. : | **CIVIL ACTION**<br>**No. 25-1895** |

**McHUGH, J.**                                                                                                          **July 29, 2025**

## MEMORANDUM

This is an ERISA action brought by several Elevator Worker Funds against Defendants Bayside Elevators LLC d/b/a Eastcoast Elevator Service ("Eastcoast Elevator") and its owner, James Dattilo, III, seeking to enforce the terms of a collecting bargaining agreement following Defendants' failure to pay mandatory contributions.[1] Default was entered on July 1, 2025, and Plaintiffs now move for the entry of judgment. My review of the record confirms that Defendants were properly served with the Complaint and the pending motion and have failed to appear or respond within the time allowed. As such, default judgment will be entered against Defendants.

**I.    Relevant Background**

Plaintiffs are the National Elevator Industry Pension Fund ("Pension Fund"), the National Elevator Industry Health Benefit Plan ("Health Benefit Plan"), the National Elevator Industry Educational Fund ("Educational Plan"), the Elevator Constructors Annuity and 401(k) Retirement Fund ("Annuity 401(k) Plan") – collectively the "Benefit Fund Plaintiffs" – and the Elevator

---

[1] Jurisdiction exists pursuant to 29 U.S.C. §§ 1104, 1109, 1132, and 1145.

Industry Work Preservation Fund ("Labor-Management Fund Plaintiff").[2] Each Fund operates according to the provisions of its respective Restated Agreement and Declaration of Trust ("Trust Agreements"), and is funded by employer contributions. The trustees of the Benefit Fund Plaintiffs are designated fiduciaries as defined in 29 U.S.C. § 1002(21).

Eastcoast Elevator is a New Jersey company that transacts business as a contractor or subcontractor in the elevator industry, and is an "employer in an industry affecting commerce" as defined by ERISA. *See* 29 U.S.C. §§ 1002(5), (9), (11), and (12). Mr. Dattilo is responsible for his company's participation in the Funds and exercises control over disbursements and contributions. Dattilo also executed a Short Form Agreement binding Eastcoast Elevator to the Plaintiffs' Trust Agreements and to the Collective Bargaining Agreement ("CBA") between the International Union of Elevator Constructors, AFL-CIO, and the National Elevator Bargaining Association. Compl. ¶ 36. The CBA requires Eastcoast Elevator to make contributions to the Plaintiff Funds for each hour of work performed by its employees. Compl. ¶16, 26; App. to Mot. for Default J. at 4, ¶ 9, ECF 9-3 (App.). Eastcoast Elevator is also required to submit monthly Contribution Reports to the Plaintiffs detailing the number of hours worked by each employee. App. at 4, ¶¶ 11-12. The total number of hours reported is then multiplied by the applicable

---

[2] The Benefit Fund Plaintiffs are multiemployer benefit plans under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1102(3), (37), whereas the Labor-Management Fund is a labor-management cooperation committee as provided for in the Taft-Hartley Act, 29 U.S.C. § 186(c)(9), and in Section 6 of the Labor-Management Cooperation Act of 1978, 29 U.S.C. § 175(a).

contribution rate in the CBA to determine the total amount owed by the employer for a specific month. *Id*.

Plaintiffs assert that Defendants failed to remit contributions for January 2025, and to provide Contribution Reports or remit contributions for February through May 2025. As such, Plaintiffs filed suit seeking payment of unreported and unpaid employer contributions, to compel a payroll audit of Defendants' records to determine the proper amounts owed to Plaintiffs, and to hold Dattilo jointly and severally liable in his personal capacity for breach of fiduciary duty to the Benefit Fund Plaintiffs.[3] Defendants have failed to appear or otherwise defend in this matter, and Plaintiffs have moved for an entry of partial default judgment.[4]

## II.     Discussion

### A.   Plaintiffs Effectuated Service

I find that Plaintiffs properly served Defendants. Plaintiffs obtained a Status Report from the New Jersey Department of the Treasury, which lists Dattilo as the sole member and Registered Agent for Eastcoast Elevator, identified Eastcoast Elevator Service's registered address as 660 Salem Ave., Franklinville, NJ, and described the address as "deliverable." Stat. Report, ECF 5-2. In late April, 2025, Plaintiffs made four unsuccessful attempts to personally serve Defendants. During one attempt, the service courier spoke with Dattilo on his Ring Doorbell, but was advised that no one was home, despite music playing within the house. ECF 5-1. On another occasion,

---

[3] The Labor-Management Fund does not establish a similar fiduciary duty.

[4] The Motion is Partial because Count IV of Plaintiffs' Complaint seeks to both conduct an audit of Defendants' Payroll Records *and* to order payment informed by the findings of the audit. Here, however, Plaintiffs only seek to compel the audit, and explain that they hope to resolve any resultant payment through compromise, before seeking the Court's intervention. Plaintiffs seek entry of Default Judgment in full for all other Counts.

the courier reported that although Mr. Dattilo declined to answer the door, the lights and television were on inside the home. *Id.* Unable to serve Defendants in person, Plaintiffs then served Defendants with copies of the Complaint and Summons via USPS certified mail, return receipt requested, and USPS first-class mail on May 28, pursuant to Federal Rule 4(e)(1) and New Jersey Rule 4:4-3(a). Despite his apparent effort to evade service, Dattilo signed the return receipt cards for the certified mailings on May 31, thereby perfecting service and making any responsive pleading due June 23, 2025. Fed. R. Civ. P. 12(a)(1).

**B. Plaintiffs' Legal Claim and Supporting Allegations are Sufficient**

"When a defendant fails to appear . . . the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). "A consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10A Fed. Prac. & Proc. Civ. § 2688 (2d ed.)). The Court must then assess "whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Int'l Union of Operating Eng'rs v. N. Abbonizio Contractors, Inc.*, 134 F. Supp. 3d 862, 865 (E.D. Pa. 2015) (citing 10A Fed. Prac. & Proc. Civ. § 2688 (4th ed.)).

Plaintiffs sufficiently establish that Defendants breached the CBA. Defendants agreed to report and pay certain sums of money to the Plaintiffs for each hour worked by Defendants' employees. But Plaintiffs credibly assert that Eastcoast Elevator failed to pay the amounts due for January 2025, and failed to both report and pay the amounts due from February through May 2025. This is a clear breach of contract.

4

I am also persuaded that Mr. Dattilo breached his fiduciary duty to the Benefit Fund Plaintiffs and may be held personally liable for related damages. ERISA imposes personal liability on "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" in relation to the plan. 29 U.S.C. § 1109(a); *Tr. of Nat'l Elevator Indus. Pension Fund v. E. Elevator Serv. Inc.*, No. 20-6150, 2021 WL 3885153, at *4 (E.D. Pa. Aug. 30, 2021). To establish personal liability for breach of fiduciary duty to a benefit plan for failure to pay contributions, a plaintiff must show 1) that the defendant's failure to remit contributions affected plan assets, and 2) that the defendant either exercised discretionary authority or control in either the management of the plan or in disposition of the plan's assets. *Id*.

Plaintiffs' factual allegations taken as true satisfy this showing. Dattilo's failure to report and remit contributions in violation of the CBA caused direct financial loss to the Benefit Fund Plaintiffs' assets. *See Tr. of Nat. Elevator Indus. Pension, Health Ben., Educ., Elevator Indus. Work Pres. Funds v. Elevator Guild, LLC, et al.*, No. 11-2870, 2013 WL 271888, at *4 (E.D. Pa. Jan. 23, 2013). And the Complaint alleges that Dattilo "exercised control and discretion over the assets of Eastcoast Elevator Service, including decisions regarding the collection of receivables, the disbursement of payroll to employees, the disbursement of any payroll deductions authorized by Eastcoat Elevator's employees, and the amounts to be paid to the Plaintiffs." Compl. ¶ 10 (cleaned up). Dattilo thus had more than "mere custody or possession of plan assets," and instead had "the practical ability to dispose of plan funds" while acting in a "unilateral, undirected nature." *Tr. Of the Nat. Elevator Indus. Pension, Health Ben., Educ., Elevator Indus. Work Pres. Funds v. Gateway Elevator Inc.*, No. 09-4206 2011 WL 2462027, at *5 (E.D. Pa. June 21, 2011). Accordingly, Dattilo used his discretion to withhold reporting and contributions, and therein

harmed plan assets. As fiduciary, Dattilo breached his duty to the Benefit Fund Plaintiffs, and shall be held jointly and severally liable for resultant damages.

### C. Default Judgment Should be Granted

In addition to finding that the Complaint states a legitimate cause of action, I must separately decide whether to grant default judgment against Defendants for failing to answer the Complaint. *Hirtz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). The Court must consider three factors in exercising this discretion: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

After analyzing these factors, I conclude that default judgment against the Defendants is appropriate. First, the Defendants allegedly owe significant sums to the Plaintiffs and have failed to appear, answer the Complaint, or respond to this motion. Any delay in adjudication will necessarily prejudice Plaintiffs' right to the amount owed, particularly when there is no indication, despite adequate notice, that the Defendants intend to join these proceedings. Second, it is difficult to see how these Defendants would have a litigable defense. Defendants had clear contractual duties to report and remit funds and they have failed to do so for several months. No legal or equitable defense is obvious on the face of the Complaint. Third, the Defendants have neither engaged in this litigation process nor offered any reason for their failure to appear despite service of the Complaint in May 2025. ECF 5-4. Having reviewed the filings, I am satisfied that the Defendants' failure to answer, appear, or in any way respond to the Complaint or the present motion is due to their own culpable conduct. This is especially so where Dattilo appears to have been home for at least two service attempts, leading me to infer that he was deliberately evasive.

### D. The Calculation of Damages

Finally, in awarding damages on a default judgment where the defendants have failed to answer or appear, I may not take the factual allegations regarding damages in the Complaint as true. *Comdyne I, Inc.*, 908 F.2d at 1149. "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). Whether the evidence contained in affidavits and documents in the record is sufficient to establish damages or whether a hearing, investigation, or other form of account is necessary is a matter of discretion for the Court. Fed. R. Civ. P. 55(b).

Pursuant to 29 U.S.C. § 1132(g)(2)(A), the CBA, and Plaintiffs' Trust Agreements, Plaintiffs seek unpaid contributions, plus interest, liquidated damages, attorneys' fees, and costs for Defendants' breach.

Under the Trust Agreements, Plaintiffs may estimate the amount of contributions owed for work performed when an employer fails to provide reporting on the number of hours worked by each employee. App. to Mot. for Default J. at 5, ¶ 16-17, ECF 9-3; *Id.* 074-080. In such an instance, Funds may project the amount due as the greater of:

> (a) the average of the monthly payments or reports submitted by the Employer for the last three (3) months for which such payments or reports were submitted, or (b) the average of the monthly payments or reports submitted by the Employer for the last twelve (12) months for which payments or reports were submitted.

*Id.* at 5, 37, 44-45, 53-54, 70-71. Here, Plaintiffs considered the average hours reported by Eastcoast Elevator for the twelve months prior to the month for which payments and reports were not submitted to estimate the value of unpaid contributions due.

Interest "shall be determined by using the rate provided under the plan." 29 U.S.C. § 1132(g)(2). The Trust Agreements adopt the rate charged by the IRS on the underpayment of taxes at the time of delinquency. For the period of January through May 2025, this rate was 7%. App. at 6, ¶¶ 19-20; *Id.* at 83-95; 29 U.S.C. § 1132(g)(2) (directing interest on unpaid calculations to be determined according to the IRS rate where no other rate is prescribed). The Benefit Fund Trust Agreements also provide that liquidated damages should be assessed at a rate of twenty percent.[5] App. at 6, ¶ 21; 29 U.SC. § 1132(g)(2)(C)(ii). Thus, pursuant to each Fund's respective Trust Agreement, the amounts due to each Plaintiff, aptly supported with documentation, are as follows:

1. *Unpaid Contributions and Interest*

Benefit Fund Plaintiffs

Unpaid Contributions for January 2025: $6,430.88
Unpaid Contributions for February-May 2025: $30,984.63
Interest on Unpaid Contributions January-May 2025: $521.06
Liquidated Damages: $7,483.10

App. at 73-81.

Employee Contributions to the Health Benefit Plan[6]

Unpaid Contributions for January 2025: $5.78
Unpaid Contributions for February-May 2025: $28.44
Interest on Unpaid Contributions January-May 2025: $0.48
Liquidated Damages: $6.84.

*Id.*

---

[5] The Labor Management Fund Agreement does not share this provision.

[6] Unlike the rest of the Benefit Fund Plaintiffs which are funded by employer contributions, the Health Benefit Plan is mutually funded by both employer and employee contributions for each hour the employee works. While employer contributions for the Health Benefit Plan are considered above, Plaintiffs also seek to recover unremitted employee contributions.

    Labor-Management Fund Plaintiffs

    Unpaid Contributions for January 2025: $174.90
    Unpaid Contributions for February-May 2025: $861.47
    Interest on Unpaid Contributions January-May 2025: $14.39.

*Id.*

    2. *Attorneys' Fees and Costs*

In addition to the outstanding contributions owed, the CBA and Benefit Fund Plaintiffs' Trust Agreements require that an employer who fails to pay contributions also pay reasonable attorneys' fees and costs. Betts Decl. ¶ 19; App. 032, 044, 052-53, 055-57, 069-70; *see also* 28 U.S.C. § 1132(g)(2)(D) (authorizing attorneys' fees and costs for ERISA funds). According to counsel's declaration and supporting documentation, Plaintiffs are owed $3,500.00 in attorneys' fees and $565.00 for the costs of filing and service. App. 96-102. I find this request fair and reasonable.

In sum, Plaintiffs are entitled to $50,576.97.[7] *See* Summ. of Damages, ECF 9-2.

    3. *Payroll Audit*

The Plaintiffs' Trust Agreements also authorize the Plaintiffs to audit the payroll records of Eastcoast Elevator to ensure that all hours are being reported and that all required contributions are being paid. *See also Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570-74 (1985) (recognizing that trustees of a benefit fund have a common law right to audit an employer's payroll books and records to determine and pursue all money owed to the

---

[7] Mr. Dattilo is only jointly and severally liable for $49,526.20 as the Labor-Management Fund does not include a fiduciary duty provision, removing recovery related to that Plaintiff from the aggregate amount for which Dattilo is jointly and severally liable.

trust). Defendants will therefore be ordered to provide all payroll books and records to Plaintiffs and to cooperate in the audit process.

Moreover, upon review, I conclude that Plaintiffs' representations regarding damages owed and supporting documentation are comprehensive, fair, and credible.

### III. Conclusion

For the reasons set forth above, Plaintiffs' Partial Motion for Default Judgment will be granted in full. An appropriate order follows.

                                             /s/ Gerald Austin McHugh
                                             United States District Judge